Henry J. Latham, J.
The plaintiffs Max Budick and Helen Budick, contract vendees of real property, originally sued to recover $2,350 paid by them on the signing of the contract, and to impress a lien therefor. The lien, however, was thereafter bonded and the lis pendens discharged so that at the trial of this action the prayer to impress a lien was abandoned and a money judgment only requested.
The defendants Max Singer and Mary Singer, contract vendors, brought a separate action, which was later consolidated with this one, to recover as damages for plaintiffs’ alleged breach of the contract the difference between the contract price and the sum realized from a subsequent sale to third parties about six months later.
Thus, as tried, this claim and counterclaim sound in law and not in equity.
Plaintiffs contend that their refusal to take title was justified because of the vendors’ breach of a representation in the contract, and because the premises were not in the same condition on the law date as on the date of the contract. The contract provided that time was of the essence.
The premises in question are a one and one-half story stucco dwelling on a 50-by-100-foot lot which had been converted from a one- to a two-family dwelling in 1948 pursuant to plans filed with the Building Department.
Plaintiffs’ proof that appurtenances and bushes had been removed between the contract and law dates was vague, contradictory and unconvincing. The court finds that some of the items claimed to be missing were not included in the sale and that the defendants had a right to remove them (unattached radiator covers and light bulbs); that some were not removed *560 at all (screens and switch plates), and that some were of insignificant value (a . couple of rose bushes and a 39-cent two-year-old fig tree).
Plaintiffs’ remaining ground for recovery of their down payment is that the property did not conform to defendants’ representation “ that the premises are a legal two-family dwelling, and is presently being occupied only by the sellers and the tenant King. If premises not registered with Building Dept, as a 2 family house, this contract may be cancelled by purchasers within 2 weeks from this date.” This ground, too, is without merit. The evidence is clear and convincing that the plaintiffs visited and inspected the premises, alone and with others, several times before and after signing the contract. What plaintiffs saw and bargained to buy was a dwelling with one three-room apartment on the second floor occupied by the tenant King. The first floor had seven rooms, separated by a partition into three and four rooms, with each group of rooms having a stove, a refrigerator and a toilet. In the cellar were partitions, a stove, refrigerator and a toilet. That the plaintiffs were fully aware of these multiple facilities is clearly evidenced by their insistence, by appropriate contractual provision, upon a transfer to them of the four stoves and four refrigerators.
Furthermore, the contract provides that “ The purchaser has inspected the buildings standing on said premises and is thoroughly acquainted with their condition, and will accept delivery of same in its present condition.” It must have been obvious, by mere inspection, that at one time or another more than two families had occupied the premises. It was undoubtedly for this reason that the plaintiffs insisted upon a written representation by the defendants that this was a ‘ ‘ legal two family dwelling. ’ ’
Subsequent to the signing of the contract and within the two weeks ’ period provided for cancellation plaintiffs ’ attorney checked with the Building Department and learned that a certificate of occupancy had indeed been issued for a two-family dwelling, as represented, and the plaintiffs did not cancel the contract. There were no violations of record against the premises on the contract date or the law date and there were only two families in occupancy, to wit, the tenant King on the second floor and the owner Singer on the first floor.
The plaintiffs did not obtain, nor even request, a provision that the existing structure conformed to existing ordinances and regulations, and plaintiffs’ attorney testified that the plaintiffs wanted the house just as it was.
*561 The court finds a complete absence of fraud or misrepresentation on the part of the sellers. When tender was made by the defendants on the closing date plaintiffs were tendered exactly what they had bargained for, which was a legal two-family dwelling, which might have been an illegal four-family house.
The court finds that plaintiffs did not perform their part of the contract and thus have forfeited their deposit of $2,350. Nevertheless, the court cannot sustain defendants’ claim for damages. ‘1 As a general rule the measure of damages for a breach by the purchaser of his contract to purchase land, if the contract is wholly executory on both sides, is the difference between the purchase price and the value of the land to be conveyed” (1 New York Law of Damages, § 215, p. 369) and “ The vendor has no right, similar to that sometimes existing where the buyer of personal property refuses to complete the purchase, to resell on account of the purchaser; and if he resells even after notice to the purchaser of his intention to do so on account of the purchaser this does not entitle him to recover the difference between the agreed price and what is received for the land on the resale, if this is more than the difference between the value of the land at the time of the breach and the agreed price ” (id., § 219, pp. 373-374). The court will, however, take the subsequent sale as some evidence of value.
The court finds that the value of the premises on the plaintiffs’ law date was $22,000. Accordingly, since the difference between this figure and the plaintiffs’ contract price is less than the contract payment which the plaintiffs have forfeited to the defendants, the defendants’ counterclaim and the complaint are dismissed.